## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

LAURA GREEN,                          *

     *Plaintiff*,                      *

     v.                               *        Civil Action No. RDB-24-2567

IMENTOR, INC.,                        *

     *Defendant*.                      *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### <u>MEMORANDUM OPINION</u>

In this employment discrimination action, Plaintiff Laura Green ("Plaintiff" or "Ms. Green") raises federal and state discrimination claims against her former employer, Defendant iMentor, Inc. ("Defendant" or "iMentor"). Ms. Green is a 50-year-old, African American woman who worked as an Executive Director at iMentor, a nonprofit organization, between February 2019 and her termination in 2022. (ECF No. 1 ¶¶ 2, 6, 16–18.) She alleges that she experienced unlawful harassment and discrimination based on her race and sex throughout her employment. *See generally* (*id.* ¶¶ 6–21.) On September 4, 2024, approximately two years after her termination, Ms. Green initiated this action by filing in this Court a twelve-Count Complaint against iMentor. (ECF No. 1.) Specifically, Ms. Green alleges gender/sexual harassment/discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't § 20-601, *et seq.* ("MFEPA"), (Counts I and II); discrimination on the basis of race in violation of Title VII and MFEPA (Counts III and IV); retaliation in violation of Title VII and MFEPA (Counts V and VI); hostile workplace environment on the basis of racial

harassment in violation of Title VII and MFEPA (Counts VII and VIII); hostile workplace environment on the basis of gender harassment in violation of Title VII and MFEPA (Counts IX and X); discrimination in violation of 42 U.S.C. § 1981 (Count XI); and wrongful discharge in violation of Maryland public policy (Count XII).[1]  (ECF No. 1.)

Presently pending before this Court is Defendant's Motion to Dismiss (ECF No. 17) pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Defendant's Motion").  Plaintiff has responded in Opposition (ECF No. 20), and Defendant has replied (ECF No. 26).  The parties' submissions have been reviewed, and no hearing is necessary.  *See* Loc. R. 106.5 (D. Md. 2025).  For the reasons that follow, Defendant's Motion to Dismiss (ECF No. 17) is GRANTED IN PART and DENIED IN PART.  Specifically, Defendant's Motion (ECF No. 17) is GRANTED as to Counts I, II, III, IV, V, VI, VII, VIII, IX, X, and XII, which are DISMISSED WITH PREJUDICE.  Defendant's Motion is DENIED as to Count XI, alleging racial discrimination under 42 U.S.C. § 1981, which remains pending.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff."  *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)).  Except where otherwise indicated, the following facts are derived from Plaintiff's Complaint (ECF No. 1) and accepted as true for the purpose of Defendant's Motion to Dismiss (ECF No. 17).

---

[1] Ms. Green alleges that this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 based on her claims under Title VII and 42 U.S.C. § 1981.  (ECF No. 1 ¶ 4.)  This Court has supplemental jurisdiction over her state law claims under 28 U.S.C. § 1367.

Ms. Green, a 50-year-old, African American woman, alleges that iMentor hired her as Executive Director of a new region in February 2019.  (ECF No. 1 ¶¶ 6.)  She alleges that she was the only black female Executive Director and she was "the lowest-paid among the four direct service regions"—New York City, Chicago, the Bay Area, and her region.[2]  (*Id.*) According to Ms. Green, New York City, Chicago, and the Bay Area regions were led by two white men and one Hispanic man.  (*Id.*)  She alleges that despite her satisfactory job performance and responsibility for launching a new region for iMentor, she was denied annual merit raises and subjected to a mandatory reduction in compensation during her employment. (*Id.* ¶ 7.)  Ms. Green further alleges that iMentor treated her differently than her white and male counterparts in executive positions, including Jason Friedman, Felix Flores, Jamal Fields, Derek Smith, and Max Palmer.  (*Id.* ¶ 8.)  According to Ms. Green, such male executives were able to honorably resign or retain their positions despite regional performance difficulties.  (*Id.*) In addition to these general allegations of differential treatment, Ms. Green also specifically raises two separate allegations of discriminatory treatment—ongoing harassment from her supervisor, Derek Smith ("Mr. Smith"), and her subsequent termination—each described below.

First, Ms. Green alleges that she endured repeated harassment by Mr. Smith, which she raised to both iMentor's chief executive officer ("CEO") and its chief operating officer ("COO").  (*Id.* ¶¶ 9–10.)  She alleges that Mr. Smith's harassment frequently occurred during

---

[2]  Ms. Green does not define the Bay Area or specifically define her region.  *See generally* (ECF No. 1).

their 1:1 weekly check-ins,[3] in which he "was verbally hostile towards her as a female employee." (*Id.*) According to Ms. Green, iMentor had no active CEO in "Winter FY22"[4] and its COO instead functioned as both CEO and COO. (*Id.* ¶ 11.) She alleges that she requested a formal meeting with that COO on a human resources ("HR") matter related to Mr. Smith, and the COO acknowledged during a weekend phone conversation with Ms. Green that she too had personally experienced discriminatory and hostile encounters with Mr. Smith. (*Id.* ¶ 12.) Ms. Green alleges that the COO's failure to take formal, HR action violated iMentor's manager protocol training. (*Id.*) Ms. Green further alleges that Mr. Smith "verbally attacked" her and caused her to cry during a 1:1 Zoom call in Winter FY22. (*Id.* ¶ 13.) She subsequently requested a formal meeting with iMentor's new CEO to discuss Mr. Smith's behavior. (*Id.*) During a phone call, the new CEO informed Ms. Green that Mr. Smith may have pressured her due to organizational performance demands before redirecting the conversation to regional needs. (*Id.* ¶ 14.) Ms. Green alleges that the new CEO took no formal action to resolve her concerns through HR, which violated iMentor's manager protocol training regarding unlawful harassment.[5] (*Id.*)

---

[3] Ms. Green's allegations related to "1:1 weekly check-ins" appear to refer to weekly, individual meetings between Ms. Green and Mr. Smith. (ECF No. 1 ¶¶ 9, 13.) It appears that some of these check-ins occurred virtually. *See* (ECF No. 1 ¶ 13).

[4] Ms. Green does not define Winter FY22, but Defendant asserts that, as posted in FY22 Audited Financial Statements located on its publicly available website, its Fiscal Year 22 ("FY22") ran from June 29, 2021, through June 30, 2022. (ECF No. 17-1 at 3.) For clarity, the Court takes judicial notice that Defendant's FY22 ran between those dates and construes Plaintiff's allegations regarding "Winter FY22" to fall somewhere within those dates. *See Jeandron v. Bd. of Regents of the Univ. Sys. Of Md.*, 510 F. App'x 223, 227 (4th Cir. 2013) (quoting FED. R. EVID. 201(b)); *see also O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007).

[5] Defendant asserts that Mr. Smith ended his employment with iMentor in March 2022, when he found employment elsewhere. (ECF No. 17-1 at 4.) Defendant argues that the Court should take judicial notice of this date, which is available publicly in at least three websites cited in Defendant's Motion to Dismiss. *See* (*id.*) The Court notes, however, that district courts in the Fourth Circuit generally may only "take judicial notice of publicly available information *on state and federal government websites* without converting [a] motion [to dismiss] to one for summary judgement." *Bowman v. Select Portfolio Servicing, Inc.*, 704 F. Supp. 3d 633, 642 (D. Md. 2023)

Ms. Green alleges that, despite iMentor Baltimore's documented history under her leadership of providing timely, supportive feedback regarding performance concerns, she received an email from the CEO on June 28, 2022, that referenced "recent concerns regarding Baltimore." (*Id.* ¶ 15.) Ms. Green alleges that this was the first time any such issues were mentioned, and the email did not provide further context or explanation. (*Id.*) On June 30, 2022, Ms. Green, the CEO, and the CTEO[6] held an in-person meeting in which the CEO referenced unspecified performance issues in various Baltimore operations. (*Id.* ¶ 16–17.) The CEO did not provide Ms. Green the opportunity to respond to these issues and instead presented her with a separation agreement that "effectively terminat[ed] her employment." (*Id.* ¶ 18.) Ms. Green alleges that she is not the first African American woman at iMentor to face disparate treatment based on race or gender. (*Id.* ¶ 20.)

On March 13, 2023,[7] Ms. Green filed a charge with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 20; ECF No. 17-2 at 2.) Ms. Green alleges that she received her a Notice of Right to Sue from the EEOC on June 6, 2024.[8] (ECF No. 1 ¶

---

[6] Ms. Green does not provide the full title of this acronym, and the Court cannot discern the full title from the Complaint.

[7] Although Ms. Green's Complaint does not provide the filing date of her EEOC charge, Defendant attaches the EEOC Charge to its Motion to Dismiss. *See* (ECF No. 17-2.) As the U.S. Court of Appeals has explained, where, as here, a party provides extrinsic evidence generally outside the purview of Rule 12(b)(6), the district court "may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiff[] do[es] not challenge its authenticity." *Am. Chiropractic v. Tricon Healthcare*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). Ms. Green's EEOC Charge is integral to her Complaint because, as explained further below, her Title VII and MFEPA claims both require exhaustion of administrative remedies, and she does not dispute the authenticity of the provided EEOC Charge.

[8] The EEOC only issues Notice of Right to Sue letters if it is unable to conclude that there is reasonable cause to believe discrimination occurred. If the EEOC had concluded that there was reasonable cause to believe discrimination occurred, the parties would have received Letters of Determination. *See What You Can Expect*

20.)  Accordingly, on September 4, 2024, Ms. Green initiated the instant action by filing in this Court a twelve-Count Complaint alleging against iMentor claims of discrimination, retaliation, and harassment under federal and Maryland law.  (ECF No. 1.)  Specifically, Ms. Green alleges gender/sexual harassment/discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (Count I); gender/sexual harassment/discrimination in violation of the Maryland Fair Employment Practices Act, MD. CODE ANN., STATE GOV'T § 20-601, *et seq.* ("MFEPA") (Count II); racial discrimination in violation of Title VII (Count III); racial discrimination in violation of MFEPA (Count IV); retaliation in violation of Title VII (Count V); retaliation in violation of MFEPA (Count VI); hostile workplace environment based on racial discrimination in violation of Title VII (Count VII); hostile workplace environment based on racial discrimination in violation of MFEPA (Count VIII); hostile workplace environment based on gender discrimination in violation of Title VII (Count IX); hostile workplace environment based on gender discrimination in violation of MFEPA (Count X); discrimination in violation of 42 U.S.C. § 1981 (Count XI); and wrongful discharge in violation of Maryland public policy (Count XII).  Defendant timely filed a Motion to Dismiss (ECF No. 17) pursuant to Federal Rule of Civil Procedure 12(b)(6).  Plaintiff timely responded in Opposition (ECF No. 20), and Defendant has replied (ECF No. 26).  This matter is now ripe for review.

---

*After a Charge is Filed*, U.S. EQUAL EMP. OPPORTUNITY COMM'N, https://www.eeoc.gov/employers/process.cfm.

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted.  The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).  A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

## ANALYSIS

In its Motion to Dismiss, iMentor contends that Ms. Green's claims under Title VII and MFEPA must be dismissed with prejudice as time-barred. (ECF No. 17-1 at 6–12.) Additionally, iMentor asserts that Ms. Green fails to state a plausible claim for relief under Title VII, Section 1981, MFEPA, or other Maryland law. (ECF No. 17-1 at 12–22.) In Opposition, Ms. Green contends that her Title VII and MFEPA claims are not time-barred because they are subject to the continuing violation doctrine. (ECF No. 20 at 11–12.) Similarly, she argues that she has adequately pled each of her claims under Rule 12(b)(6). (*Id.* at 12–16.) In Reply, iMentor asserts that by improperly asserting the continuing violation doctrine, Ms. Green concedes that her Title VII and MFEPA claims are time-barred, and she effectively concedes that her claims are inadequately pled. (ECF No. 26 at 1, 2–10.) Additionally, iMentor argues that Ms. Green is not permitted to plead her wrongful discharge claim in the alternative, and leave to amend should be denied as futile. (*Id.* at 1, 10–14.) The Court addresses each argument in turn.

## I. Statute of Limitations & Administrative Exhaustion: Title VII (Counts I, III, V, VII, IX)

Under Title VII of the Civil Rights Act of 1964, a plaintiff may only bring a civil action against her employer if she has "file[d] an administrative charge with the EEOC within 180 days of the alleged misconduct." *Williams v. Giant Food, Inc.*, 370 F.3d 423, 428 (4th Cir. 2004) (citing 42 U.S.C. § 2000e-5(e)(1)). In deferral states such as Maryland,[9] this statutory filing

---

[9] A deferral state is one with "a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof." 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(2). Maryland is classified as a deferral state because the Maryland Commission on Civil Rights—previously known as the Maryland Commission on Human Relations—is capable of providing relief from discrimination.

period is extended such that a Title VII charge of discrimination must be filed with the EEOC within 300 days of the alleged discriminatory action. *EEOC v. R&R Ventures*, 244 F.3d 334, 338 n.1 (4th Cir. 2001); *see also Williams*, 370 F.3d at 428 ("This period is extended to 300 days in cases such as this, 'when state law proscribes the alleged employment practice and the charge has initially been filed with a state deferral agency.'" (citation omitted)). Crucially, however, this 300-day limitations period applies differently depending on whether the alleged discriminatory behaviors constitute "discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002).

Where the alleged conduct constitutes a "discrete act," "an employee must file a charge of discrimination within the appropriate limitations period as to each discrete act of discrimination that occurred. Such discrete acts of discrimination 'are not actionable if time-barred, even when they are related to acts alleged in timely filed charges.'" *Williams*, 370 F.3d at 429 (quoting *Morgan*, 536 U.S. at 113). Where the challenged acts involve repetitive acts within the same challenged employment practice, however, the claim is subject to the continuing violation doctrine and "will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Morgan*, 536 U.S. at 122. Importantly, the continuing violation doctrine cannot apply to "discrete discriminatory acts," meaning that when not timely filed, a "discrete act claim remains time-barred even if it is part of a series of related actions, some of which occurred during the limitations period." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 222 (4th Cir. 2016) (citing *Morgan*, 536 U.S. at 113). In this case, Ms. Green filed her EEOC

Charge on March 13, 2023, so any alleged conduct prior to May 17, 2022, occurred more than 300 days prior to the EEOC filing date.  Accordingly, any "discrete act" prior to May 17, 2022, is time-barred.  As explained above, Ms. Green alleges discrimination, harassment, retaliation, and hostile work environment under Title VII, and the Court addresses each in turn, grouping them together where appropriate.

### A.  Title VII Discrimination and Retaliation (Counts I, III, V)

Ms. Green fails to respond to Defendant's assertion that her race and gender discrimination claims under Title VII in Counts I and III and her retaliation claim under Title VII in Count V are time-barred because they relate to alleged discrete instances of discrimination that occurred more than 300 days before she filed her EEOC Charge on March 13, 2023.  As this Court has repeatedly explained, failure to respond to an opposing party's arguments in a motion to dismiss constitutes abandonment of that claim.  *See, e.g.*, *Ferdinand-Davenport v. Child.'s Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) (deeming Title VII discrimination claim abandoned for failure to respond (citing *Mentch v. E. Savs. Bank, FSB*, 949 F. Supp. 1236, 1247 (D. Md. 1997)); *see also Mathis v. McDonough*, Civ. No. ELH-13-2597, 2014 WL 3894133, at *8 (D. Md. Aug. 7, 2014) (dismissing claim as abandoned where plaintiff failed to respond to argument in dispositive motion).  Accordingly, Ms. Green has abandoned her Title VII claims of discrimination and retaliation, and Defendant's Motion is GRANTED as to Counts I, III, and V.

### B.  Hostile Workplace Environment Under Title VII (Counts VII, IX)

As the Supreme Court has explained, because "a hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment

practice,'" it is subject to the continuing violation doctrine. *Morgan*, 536 U.S. at 117 (quoting 42 U.S.C. § 2000e-5(e)(1)). Thus, even where some of the alleged incidents occurred outside the limitations period, hostile work environment claims are not time-barred "so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *Id.* at 122. In this case, Ms. Green's hostile work environment claims under Title VII encompass her allegations of harassment, discrimination, and retaliation, including her termination. *See* (ECF No. 1 ¶¶ 90–100 (race), ¶¶ 115–124 (gender)). Ms. Green's termination occurred on June 30, 2022, which is well within the 300-day period to file an EEOC Charge under Title VII, and her allegations of gender and race discrimination and harassment prior to her termination are part of her claims for hostile work environment based on race and gender discrimination. Accordingly, Plaintiff's hostile work environment claims under Title VII (Counts VII and IX) are not time-barred.

## II.    Timely Exhaustion Requirement: Maryland Fair Employment Practices Act (Counts II, IV, VI, VIII, X)

As Judge Rubin of this Court recently summarized, the Maryland Fair Employment Practices Act ("MFEPA") provides that "an employer may not 'fail or refuse to hire, discharge, or otherwise discriminate against any individual with respect to the individual's compensation, terms, conditions, or privileges of employment' or 'limit, segregate, or classify its employees or applicants for employment in any way that would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect the individual's status as an employee' because of" that individual's protected status. *Hanke v. United Parcel Serv., Inc.*, Civ. No. JRR-23-2130, 2024 WL 3554973, at *4 (D. Md. July 26, 2024) (quoting MD. CODE ANN., STATE GOV'T § 20-606(a)(1)). MFEPA also prohibits discrimination or retaliation against an

employee because such employee has engaged MFEPA's protections or participated in MFEPA proceedings. *Id.* (quoting MD. CODE ANN., STATE GOV'T § 20-606(f)). Judge Bredar of this Court has explained that Maryland's highest court "has deemed [M]FEPA to be the state law analogue of Title VII, and has noted that Maryland courts 'traditionally seek guidance from federal cases in interpreting [MFEPA].'" *Linton v. Johns Hopkins Univ. Applied Physics Lab'y, LLC*, Civ. No. JKB-10-276, 2011 WL 4549177, at *4 n.3 (D. Md. Sept. 28, 2011) (quoting *Haas v. Lockheed Martin Corp.*, 914 A.2d 735, 742 (Md. 2007)). MFEPA provides that "a complainant may bring a civil action against" her employer if (1) she has complied with MFEPA's administrative exhaustion requirements; (2) "at least 180 days have elapsed since the filing of the administrative charge or complaint;" *and* (3) "the civil action is filed within 2 years after the alleged unlawful employment practice occurred." MD. CODE ANN., STATE GOV'T § 20-1013(a)(1)(i)–(iii)(1). In this case, Defendant contends that Ms. Green's MFEPA claims are time-barred because she has failed to comply with the statute's administrative exhaustion requirements. (ECF No. 17-1 at 9–10.)

To satisfy MFEPA's administrative exhaustion requirement as required to file a civil action against an employer, a plaintiff generally must file an administrative complaint against her employer. *See* MD. CODE ANN., STATE GOV'T § 20-1004(c)(1)(i), (c)(2). This Court has recognized that "[u]nder the MFEPA, [a plaintiff] may exhaust her administrative remedies by filing a complaint with either the Maryland Commission on [Civil Rights] or '[a] complaint with a federal or local human relations commission within 6 months after the date on which the alleged discriminatory act occurred.'" *Allen v. Discovery Comms., LLC*, Civ. No. PWG-15-1817, 2016 WL 5404558, at *3 (D. Md. Sept. 28, 2016) (quoting *Ferdinand-Davenport*, 742 F.

Supp. 2d at 778).  Significantly, however, where a plaintiff elects to file a complaint with a federal human relations commission *only*, she must file that complaint "within 6 months after the date on which the alleged discriminatory act occurred" to satisfy MFEPA's administrative exhaustion requirement.[10]  MD. CODE ANN., STATE GOV'T § 20-1004(c)(1)(i); *see also id.* § 20-1004(c)(2); *Membreno v. Atlanta Rest. Partners, LLC*, 517 F. Supp. 3d 425, 437 (D. Md. 2021) ("The relevant MFEPA provision at the time required that the charge 'be filed within 6 months after the date on which the alleged discriminatory act occurred.'" (quoting MD. CODE ANN., STATE GOV'T § 20-1004(c)(1))); *Crockett v. SRA Intern.*, 943 F. Supp. 2d 565, 570 (D. Md. 2013) ("For a charge or complaint to be timely, plaintiffs must file it 'within 6 months after the date on which the alleged discriminatory act occurred.'" (quoting MD. CODE ANN., STATE GOV'T § 20-1004(c))); *Campbell v. Beckton, Dickinson, & Co.*, Civ. No. ELH-22-3043, 2024 WL 1299354, at *31 (D. Md. Mar. 27, 2024) ("Under MFEPA a claimant must first lodge a complaint with the Maryland Commission on Civil Rights, and it must be filed within six months of the alleged unlawful occurrence." (quoting MD. CODE ANN., STATE GOV'T § 20-1004(c)(1)(i))).

---

[10]  Although MFEPA provides slightly different administrative exhaustion timelines for discrimination and retaliation claims as opposed to harassment claims, the general rule is that "a complaint shall be filed within 6 months after the date on which the alleged discriminatory act occurred."  MD. CODE ANN., STATE GOV'T § 20-1004(c)(1)(i).  As to claims of an "unlawful employment practice other than harassment," a complaint must be "filed within 300 days after the date on which the alleged discriminatory act occurred," and "[a] complaint filed with a federal human relations commission within 6 months . . . shall be deemed to have complied with [this time limitation]."  *Id.* § 20-1004(c)(2)(i)–(ii).  While claims of harassment receive a longer local filing timeline under MFEPA, they remain subject to the requirement that "[a] complaint filed with a federal human relations commission within 6 months . . . shall be deemed to have complied with [the filing timeline]."  *Id.* § 20-1004(c)(3)(i)–(ii).  Put differently, where a plaintiff raising claims under MFEPA in a civil action does *not* file with the Maryland Commission on Human Rights or another state agency and *only* files with a federal human relations commission, that plaintiff must file her federal administrative complaint within six months to comport with MFEPA's administrative exhaustion requirement.  *Id.*; *see also Crockett v. SRA Intern.*, 943 F. Supp. 2d 565, 570 (D. Md. 2013).

In this case, Ms. Green does not allege that she filed any complaint with the Maryland Commission on Civil Rights or any other state or local human rights commission.[11]  *See generally* (ECF No. 1).  Ms. Green was terminated on June 30, 2022, and her allegations relate entirely to her termination and conduct that occurred during her employment.  That is, at the very latest, she alleges unlawful employment conduct on June 30, 2022.  Under MFEPA's six-month deadline to administratively exhaust claims by filing an EEOC charge, therefore, she was required to file any charge with the EEOC on or before December 30, 2022.  As noted above, she did not file her EEOC Charge until March 13, 2023, more than two months later. (ECF No. 17-2 at 2).  Accordingly, Ms. Green's MFEPA claims are not timely exhausted, and Defendant's Motion is GRANTED as to Counts II, IV, VI, VIII, and X.

## III.    Failure to State a Claim for Relief

iMentor next argues that Ms. Green's remaining claims must be dismissed for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 17-1 at 12.)  Specifically, iMentor contends that the hostile work environment claims in Counts VII and IX fail to plausibly allege causation or severe or pervasive conduct as required for a cognizable claim for relief under Title VII.  (ECF No. 17-1 at 12–15.)  Similarly, iMentor contends that Ms. Green fails to plausibly state a claim of discrimination in violation of 42 U.S.C. § 1981 in Count XI because she fails to allege that she was meeting iMentor's performance expectations at the time of her termination, and she does not allege facts

---

[11]  Ms. Green does not appear to respond to Defendant's allegation that she has not exhausted administrative remedies under MFEPA, and the Court notes that her failure to respond constitutes abandonment of her MFEPA claims in Counts II, IV, VI, VIII and X.  *See, e.g.*, *Ferdinand-Davenport*, 742 F. Supp. 2d at 777.  In addition to the failure to timely exhaust administrative remedies under MFEPA discussed above, therefore, her abandonment of these claims forms a separate and independent basis on which to dismiss them.

sufficient to give rise to an inference of discrimination. (ECF No. 17-1 at 12, 16–19.) Finally, iMentor argues that Ms. Green's wrongful discharge claim in Count XII must be dismissed because Maryland law permits such claims only where there is no alternative statutory remedy available to the plaintiff. (ECF No. 17-1 at 12, 21–22.) In Opposition, Ms. Green contends that she sufficiently alleged her Title VII hostile workplace environment claims at this pleading stage. (ECF No. 20 at 13–14.) Additionally, she argues that she has pled facts sufficient to allege satisfactory job performance and an inference of discrimination under Section 1981, and she is permitted to plead her wrongful discharge claim in the alternative. (*Id.* at 14–15, 16–17.) The Court evaluates each claim in turn, grouping some together where appropriate.

### A. Hostile Workplace Environment Under Title VII (Counts VII and IX)

Under Title VII, "[a] hostile work environment is one 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Walker v. Mod-U-Kraf Homes, LLC*, 775 F.3d 202, 207 (4th Cir. 2014) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *accord McIver v. Bridgestone Ams., Inc.*, 42 F.4th 398, 407 (4th Cir. 2022) (quoting *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (en banc)). To state a claim for a hostile work environment, a plaintiff must allege that: "(1) the harassment was unwelcome; (2) the harassment was based on his race or [sex]; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer."[12] *Causey v.*

---

[12] As both the Fourth Circuit and the Supreme Court have explained, "[i]n the context of a Title VII case, 'an employment discrimination plaintiff need not plead a *prima facie* case of discrimination' to survive a motion to dismiss.'" *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2004) (quoting *Swierkiewicz v. Sorema, N.A.*, 534

*Balog*, 162 F.3d 795, 801 (4th Cir. 1998) (citing *Harsell v. Duplex Prods., Inc.*, 122 F.3d 766, 722 (4th Cir. 1997)).  At the pleading stage, a plaintiff bears the burden to allege facts sufficient to state a claim for hostile workplace environment in violation of Title VII "above the speculative level."  *McLeary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555).  As explained below, in this case, Ms. Green fails to state a claim of hostile work environment in violation of Title VII based on harassment on the basis of sex (Count IX) or harassment on the basis of race (Count VII).

### i.    Hostile Workplace Environment Based on Race (Count VII)

"To establish that harassment was based on race, [the plaintiff] must show that but for her race, she would not have been the victim of the alleged discrimination."  *McIver*, 42 F.4th at 409 (alteration in original) (quoting *Gilliam v. S.C. Dep't of Juv. Just.*, 474 F.3d 134, 142 (4th Cir. 2007)).  The U.S. Court of Appeals for the Fourth Circuit has explained that a court "may infer that harassment is based on race when the plaintiff suffered harassment more often than others of different races or suffered harassment of a kind likely to be motivated by race."  *Id.* (citing *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 318 (4th Cir. 2008)).  However, "a plaintiff cannot rely on her own 'conjecture' to impute a racial character to what appears to be neutral harassment."  *Id.* (quoting *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280–81 (4th Cir. 2000)).

In this case, Ms. Green fails to allege any facts that would support an inference that she faced harassment based on her race.  Her allegations of harassment center on Mr. Smith's treatment of her during weekly 1:1 meetings, and she exclusively alleges that his behavior arose

---

U.S. 506, 515 (2002)).  Instead, a plaintiff need only "allege facts to satisfy the elements of a cause of action" under Title VII.  *McLeary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 585 (4th Cir. 2015).

due to her status "as a female." (ECF No. 1 ¶¶ 9, 12, 13.) That is, she alleges that Mr. Smith "was verbally hostile towards her *as a female employee*;" when she reported the conduct to the COO, the COO "acknowledged that she too had personally experienced discriminatory and verbally hostile counters with Derek [Mr. Smith] *as a female*;" and she "requested a formal meeting with the new CEO regarding Derek's treatment of her *as a female employee*." (*Id.* (emphasis added).) Accordingly, the Complaint is devoid of factual allegations that would support any inference that the harassment alleged would not have occurred "but for her race." *McIver*, 42 F.4th at 409. Indeed, her allegations support the inference that the alleged mistreatment occurred based on her sex, rather than her race.

To the extent that Ms. Green argues that her allegations of lower compensation and termination support her claim of a hostile work environment based on race,[13] these allegations fall short of alleging "discriminatory intimidation, ridicule, and insult" in the manner required to state a claim for hostile work environment under Title VII. *Boyer-Liberto*, 786 F.3d at 277 (quoting *Harris*, 510 U.S. at 21). In weighing whether conduct was sufficiently "severe or pervasive" under the third element of a hostile workplace environment claim, courts consider the following non-exhaustive factors: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. *Harris*, 510

---

[13] Although hostile work environment claims under Title VII generally arise from allegations of ongoing harassment, courts routinely recognize that a plaintiff may allege termination as part of a hostile work environment claim. *See, e.g.*, *Guesseous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 222–23 (4th Cir. 2016) (recognizing termination as part of hostile work environment claim); *cf. Agolli v. Off. Depot, Inc.*, 548 F. App'x 871, 875 (4th Cir. Dec. 18, 2013) (noting plaintiff failed to allege termination as "part and parcel of the hostile work environment"). Drawing all inferences to favor Plaintiff at this pleading stage, the Court construes her hostile work environment claims to include her allegations regarding her termination and compensation.

U.S. at 23.  The Fourth Circuit has set a "high bar in order to satisfy the severe or pervasive test:"

> Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard.  Some rolling with the punches is a fact of workplace life.  Thus, complaints premised on nothing more than "rude treatment by [coworkers]," "callous behavior by [one's] superiors," or "a routine difference of opinion and personality conflict with [one's] supervisor," are not actionable under Title VII.

*Sunbelt Rentals, Inc.*, 521 F.3d at 315–16 (first quoting *Baqir v. Principi*, 434 F.3d 733, 747 (4th Cir. 2006); then quoting *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003); and then quoting *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 276 (4th Cir. 2000)).  The Fourth Circuit has clarified that "[t]he inquiry into objectively severe or pervasive abusive conduct must focus on the events that the plaintiff personally experienced."  *McIver*, 42 F.4th at 408; *accord Perkins v. Int'l Paper Co.*, 936 F.3d 196, 210 (4th Cir. 2019).  Therefore, "conduct directed at others is relevant [only] if the plaintiff knew of the conduct."  *Id.* (citing *Sunbelt Rentals, Inc.*, 521 F.3d at 317).

In this case, therefore, Ms. Green's allegations of a hostile work environment due to her lower compensation and termination are limited solely to the facts she is alleged to have known.  That is, the Court does not consider her allegation that "she is not the first African-American woman to have an issue with Defendant and be treated differently because of their race and gender" because she does not allege that she was aware of this fact during her employment.[14]  (ECF No. 1 ¶ 19.)  Ms. Green alleges that (1) "she was denied annual merit

---

[14]  Plaintiff's Response in Opposition suggests that Plaintiff's counsel, not Plaintiff herself, was aware of allegations of disparate treatment of African American women.  (ECF No. 20 at 12.)

increases [and] . . . subjected to a mandated pay cut, even though she was responsible for launching a brand-new region from the ground up;" (2) "she was treated differently than her male and white male counterparts in executive positions;" (3) she received no notice of "unspecified performance concerns in various areas of the Baltimore operations," was not given the "opportunity to respond or provide input" as to those concerns, and was "effectively terminat[ed] . . . without a chance for her to address or discuss the alleged concerns;" and (4) she was the only black female Executive Director, and she was the "lowest paid among the four direct service regions." (ECF No. 1 ¶¶ 7, 8, 17–18.)

Under the Supreme Court's factor-based analysis to evaluate alleged severe and pervasive harassment, these allegations are insufficient to state a claim for relief. Notably, the frequency of the discriminatory conduct alleged—that is, her lower compensation and termination—was minimal. At most, Ms. Green would have been denied annual merit raises three times, since she only worked at iMentor between February 2019 and June 30, 2022. Similarly, she only could have been denied the opportunity to retain her position or address performance concerns related to her termination one time because she does not allege that she faced the threat of termination more than once. Relatedly, she alleges no facts that would support a conclusion that the alleged mistreatment was "physically threatening or humiliating," which tends to disfavor the conclusion that she has adequately alleged "severe or pervasive" harassment giving rise to a hostile workplace environment under Title VII. Finally, Ms. Green does not allege that her lower compensation interfered with her work performance.[15] To the

---

[15] Nor does Ms. Green allege that she feared termination based on her race. Rather, the Complaint suggests that she was blindsided by the performance concerns used to justify her termination because she alleges that

contrary, she suggests that she met her performance obligations.  (ECF No. 1 ¶¶ 7–8.)  Even

construing all facts and inferences in her favor, she has not alleged facts sufficient to state a

claim for relief based on a hostile work environment due to racial harassment.  Her Complaint

is devoid of allegations of "discriminatory intimidation, ridicule, and insult."  *Boyer-Liberto*, 786

F.3d at 277 (quoting *Harris*, 510 U.S. at 21).  Accordingly, she has failed to allege hostile

environment based on race, and Defendant's Motion is GRANTED as to Count VII.

### ii.    Hostile Workplace Environment Based on Sex (Count IX)

Next, Ms. Green alleges in her hostile work environment claim in Count IX that her

supervisor, Mr. Smith, repeatedly harassed her on the basis of her sex during their weekly 1:1

meetings.  (ECF No. 1 ¶¶ 9–14, 114–124.)  In its Motion to Dismiss, iMentor argues that the

alleged harassment was not sufficiently "severe or pervasive" to state a claim for hostile

workplace environment based on sexual harassment under Title VII.  (ECF No. 17-1 at 14–

15.)  In Opposition, Ms. Green contends that she has sufficiently alleged "a pattern or

harassment, exclusion, and differential treatment over time, culminating in her termination."

(ECF No. 20 at 13–14.)  As explained further below, Ms. Green has not alleged facts sufficient

to state a claim of hostile work environment based on sex-based harassment under Title VII.

As explained above, courts evaluate whether harassment is sufficiently "severe or

pervasive" to create a hostile work environment under a non-exhaustive, four-factor analysis

of the harassment's frequency, severity, nature, and interference with the plaintiff's work

performance.  *Harris*, 510 U.S. at 23.  The Fourth Circuit has held that harassment by a

---

she learned of the concerns for the first time on June 28, 2022, two days before her termination.  (ECF No. 1
¶ 15.)

supervisor "tends to be more serious," and is "a significant factor" in the analysis of whether conduct is severe and pervasive. *McIver*, 42 F.4th at 408 (citation omitted).  Even so, as noted above, "callous behavior by [one's] superiors or a routine difference of opinion and personality conflict with [one's] supervisor" are not actionable under Title VII. *Sunbelt Rentals, Inc.*, 521 F.3d at 315–16 (alterations in original) (internal quotation marks and citations omitted).

As to the frequency of the alleged sex-based harassment in this case, Ms. Green has alleged that she faced harassment from Mr. Smith each week during 1:1 meetings but she only alleges one specific instance of such harassment in "Winter FY22."   (ECF No. 1 ¶ 13.) Additionally, Ms. Green acknowledges in her EEOC Charge that Mr. Smith honorably resigned from iMentor in 2022.  (ECF No. 17-2 at 5.)  The Fourth Circuit has recognized hostile work environment claims where a plaintiff alleges that the "harassment occurred at least weekly." *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 179 (4th Cir. 2001).  Notably, however, because Ms. Green's allegations of sex-based harassment in this case focus on her experiences in weekly check-ins with Mr. Smith, the weekly harassment alleged could not have extended past the date of his resignation.[16]  (ECF No. 1 ¶ 13; ECF No. 17-2 at 5.)  Even so, drawing all inferences to favor Ms. Green at this pleading stage, her allegations of weekly harassment by Mr. Smith slightly favor severe or pervasive harassment.  The remaining factors, however, heavily disfavor the conclusion that Ms. Green has sufficiently alleged severe or pervasive harassment as required to state a claim for relief.

---

[16]  Although, as discussed above, the Court does not conclude that Ms. Green's claim of hostile workplace environment based on sexual harassment is subject to dismissal as time-barred, the Court notes that her allegations regarding weekly sexual harassment specify that such harassment occurred in Winter FY22, which would have been before 300 days prior to the date she filed her EEOC Charge. *See, e.g.*, (ECF No. 1 ¶ 13.) Drawing all inferences in Ms. Green's favor, the Court construes her pleadings to allege that sexual harassment extended past May 17, 2022, which marked 300 days prior to the day she filed her EEOC Charge.

Indeed, Ms. Green's allegations of harassment are so vague as to make it difficult to evaluate the alleged harassment, which itself suggests that she has not adequately pled a claim of hostile work environment under Title VII. *See Butts v. Encore Mktg. Intern.*, Civ. No. PJM-10-3244, 2012 WL 3257595, at *4 (D. Md. Aug. 7, 2012) (collecting cases where plaintiffs "failed to provide concrete examples" of alleged harassment). Moreover, as the Fourth Circuit has explained, allegations that a supervisor engaged in harassment by "sp[eaking] to [an employee] with contempt" and "frequently treat[ing] her with disdain" are insufficient to give rise to a claim for hostile workplace environment under Title VII. *Decoster v. Becerra*, 119 F.4th 332, 338 (4th Cir. 2024) (alterations in original). In this case, Ms. Green does not make *any* specific allegations regarding Mr. Smith's treatment of her, except to allege that he "verbally attacked" her or "was verbally hostile towards her." (ECF No. 1 ¶¶ 9, 13.) Nor does she allege that Mr. Smith's treatment of her included physical threats or humiliation. Although she alleges that Mr. Smith's verbal communications caused her to cry during one call, she does not provide any facts regarding the treatment that precipitated this outcome, and she does not allege that his alleged harassment interfered with her work performance. (ECF No. 1 ¶ 13.)

In short, Ms. Green's vague allegations of verbal harassment from her supervisor are woefully insufficient to meet the "high bar" to allege a claim for hostile workplace environment. *Sunbelt Rentals, Inc.*, 521 F.3d at 315–16. She simply does not allege facts sufficient to state that her work environment was "permeated with discriminatory intimidation, ridicule, and insult that [wa]s sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Walker*, 775 F.3d at 207 (quoting *Harris*, 510 U.S. at 21). As such, Ms. Green has not alleged facts sufficient

to state the elements of hostile work environment based on sex-based harassment under Title VII, and Defendant's Motion is GRANTED as to Count IX.

## B.  Discrimination in Violation of 42 U.S.C. § 1981 (Count XI)

A plaintiff pursuing a claim of race discrimination under 42 U.S.C. § 1981 may proceed under either the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) or "through direct evidence" of discrimination.  *Strothers v. City of Laurel*, 895 F.3d 317, 327 (4th Cir. 2018).  Where, as here, a plaintiff presents no direct evidence of discrimination, the *McDonnell Douglas* framework requires the plaintiff to first make out a prima facie case of discrimination by showing that: (1) she is a member of a protected class; (2) her job performance was satisfactory at the time of the adverse employment action; (3) she was subjected to an adverse employment action; and (4) "the adverse employment action occurred 'under circumstances giving rise to an inference of unlawful discrimination' [which can be] met if 'similarly-situated employees outside the protected class received more favorable treatment.'"  *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 7458, 747 (4th Cir. 2017) (first quoting *Adams v. Trs. of Univ. of N.C.-Wilmington*, 640 F.3d 550, 558 (4th Cir. 2011); and then quoting *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004)).  Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence that the adverse employment action was taken "for a legitimate, nondiscriminatory reason."  *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000).  Then, the plaintiff is "afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  *Id.* (quoting

*Tex. Dep't Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)).  As explained below, at this pleading stage, Ms. Green has sufficiently alleged a claim of discrimination under Section 1981.

As an initial matter, Ms. Green has alleged that she is a member of a protected class, and she was subject to adverse employment actions in the form of lower compensation throughout her employment and termination on June 30, 2022.  *See Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 123 (4th Cir. 2021) ("'Discharge' from employment is one form of adverse employment action.").  As Judge Chasanow of this Court has recently recognized, "[b]eing paid less for equivalent work can be an adverse employment action." *Winsett v. H&S Res. Corp.*, Civ. No. DKC-21-2932, 2025 WL 254748, at *9 (D. Md. Jan. 21, 2025)  (citing *Noonan v. Consol. Shoe Co., Inc.*, 84 F.4th 566, 572 (4th Cir. 2023)).  Drawing all inferences to favor Ms. Green at this pleading stage, for the reasons set forth below, she has alleged facts sufficient to state a claim for relief under Section 1981 in Count XI.

### i.    Satisfactory Job Performance

Courts evaluate an employee's alleged satisfactory job performance from the perspective of the employer, rather than the employee.  *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980).  As this Court has explained, "[t]his requires a plaintiff to provide 'detailed factual information regarding performance.'" *Burns v. WSSC Water*, Civ. No. GLS-21-2509, 2022 WL 3043412, at *5 (D. Md. Aug. 2, 2022) (quoting *Bynum v. Martin*, Civ. No. GJH-16-2067, 2016 WL 7468050, at *5 (D. Md. Dec. 27, 2016)).  While a conclusory allegation of satisfactory job performance is insufficient to meet this burden, this Court has concluded that a plaintiff sufficiently alleges satisfactory job performance where she alleges "that she was told on more than one occasion by a supervisor that her work product was fine and that she did not need

more training." *Lazarte v. Montgomery Cnty. Pub. Schs.*, Civ. No. DLB-20-1515, 2021 WL 5770281, at *5 (D. Md. Dec. 6, 2021); *see also Stovall v. H&S Bakery*, Civ. No. TDC-20-3234, 2021 WL 2580746, at *5 (D. Md. June 23, 2021) (deeming satisfactory job performance sufficiently alleged where plaintiff "had an unblemished file and an exemplary record for services and accolades" and received "awards for Salesman of the Year and Perfect Attendance").

In this case, Ms. Green alleges that "she consistently received satisfactory or better bi-annual and annual performance reviews;" the CEO's email on June 28, 2022, "mark[ed] the first mention of" "concerns regarding Baltimore;" and "iMentor Baltimore, under Plaintiff's leadership, has a documented history of providing timely and supportive feedback regarding performance concerns." (ECF No. 1 ¶¶ 8, 15.)  Construing all facts and inferences to favor Plaintiff, as the Court must at this pleading stage, these allegations are sufficient to allege satisfactory job performance throughout her employment. *See, e.g.*, *Lazarte*, 2021 WL 5770281, at *5 (allegations of supervisor satisfaction sufficient to allege satisfactory performance at pleading stage); *Quiroz v. Empirian Vill. of Md., LLC*, Civ. No. AAQ-21-2638, 2022 WL 1321594, at *2 (D. Md. May 3, 2022) (deeming allegation that plaintiff "was never informed by Defendant 'that his job was in jeopardy prior to his termination'" sufficient to allege satisfactory job performance at the time of his dismissal).  To the extent iMentor contends that Ms. Green has not alleged satisfactory job performance at the time of her termination, this argument is premature.  As Judge Hollander of this Court has recognized, at the pleading stage, a plaintiff sufficiently alleges satisfactory job performance despite termination where she was "abruptly fired" without identification of "particular deficiencies" in her job performance.

*Parker v. Child.'s Nat'l Med. Ctr., Inc.*, Civ. No. ELH-20-3523, 2021 WL 5840949, at \*10 (D. Md. Dec. 9, 2021).    In this case, Ms. Green's allegations that she first learned of vague performance concerns two days before her termination and was not provided the opportunity respond to those concerns are sufficient to allege satisfactory job performance at this pleading stage.    *See id.*; (ECF No. 1 ¶¶ 16–17).

### ii.    Inference of Unlawful Discrimination

Defendant next contends that Ms. Green has not sufficiently alleged that she was terminated in a manner "giving rise to an inference of unlawful discrimination." *Adams v. Trs. of Univ. of N.C.-Wilmington*, 640 F.3d 550, 558 (4th Cir. 2011).    Specifically, iMentor contends that an employer's offer of severance cannot alone support an inference of discrimination and Ms. Green fails to allege that any similarly situated comparator was treated differently because there is no legal distinction between forced resignation and termination.    (ECF No. 17-1 at 17–18.)    Finally, iMentor argues that the CEO who terminated Ms. Green shared her race and sex, which weakens any inference of discrimination.    (*Id.* at 19.)    Notably, iMentor does not address Ms. Green's allegations that she received lower compensation than her non-African American peers in Executive Director positions.    *See generally* (ECF No. 17-1; ECF No. 26).

Although iMentor argues that termination is not legally distinct from resignation, this appears to remain an open question in this Court and others.    This Court has suggested that a plaintiff may raise an inference of discrimination where a similarly situated individual was permitted to resign but the plaintiff was terminated.    *See, e.g.*, *Courtney-Pope v. Bd. of Educ. of Carroll Cnty.*, Civ. No. ELH-16-4055, 2019 WL 4447246, at \*17 (D. Md. Sept. 17, 2019) (rejecting claim of disparate discrimination where plaintiff alleged similarly situated employee

was allowed to resign in lieu of termination on basis that plaintiff failed to show employee allowed to resign was similarly situated rather than on basis that resignation is equivalent to termination); *see also Collins v. Kan. City Mo. Pub. Sch. Dist.*, 92 F.4th 770, 773–74 (8th Cir. 2024) (noting skepticism but accepting, without deciding, "that forcing someone to resign in lieu of termination is materially different from outright termination . . ."). The Court need not decide this inquiry at this stage, however, because Ms. Green also alleges that she was paid less than Executive Directors who were not African American. (ECF No. 1 ¶ 6.)

As this Court has recognized, an African American plaintiff raising a claim of race discrimination under 42 U.S.C. § 1981 satisfies her burden under the first step of the *McDonnell Douglas* framework where it is "undisputed" that she received lower pay than a white employee in the same position. *See Foster v. GeneDx, Inc.*, 417 F. Supp. 3d 673, 689 (D. Md. 2019); *accord Darden v. Hous. Auth. of Balt.*, Civ. No. PWG-06-216, 2006 WL 3231964, at *6–*7 (D. Md. Nov. 7, 2006). Once a plaintiff has met her burden under the first step of the *McDonnell Douglas* analysis, the burden shifts to the defendant to offer a legitimate, non-discriminatory justification for the disparate treatment. *Wannamaker-Amos v. Purem Novi, Inc.*, 126 F.4th 244, 255 (4th Cir. 2025); *accord Foster*, 417 F. Supp. 3d at 689. Construing all facts and inferences to favor Ms. Green in this case, she has met her burden to allege facts sufficient to raise an inference of unlawful discrimination by showing that similarly situated employees outside the protected class—specifically, the three other Executive Directors who were not African American—received more favorable treatment in the form of higher pay.[17] (ECF No. 1 ¶ 6.)

---

[17] Defendant's argument regarding failure to identify similarly situated comparators appears to relate to Ms. Green's allegations as to "male executives." *See* (ECF No. 26 at 9; ECF No. 17-1 at 18–19). Ms. Green's allegations as to "male executives," however, are distinct from her allegations that she "was the only black

Thus, the burden shifts to iMentor to offer an alternative explanation for this difference in pay, but iMentor has not offered any such explanation. Accordingly, drawing all inferences to favor Ms. Green at this pleading stage, she has sufficiently alleged a claim for race discrimination in violation of 42 U.S.C. § 1981, and Defendant's Motion is DENIED as to Count XI.

### C. Wrongful Discharge (Count XII)

Finally, Ms. Green has failed to adequately allege a claim for wrongful discharge in violation of Maryland public policy in Count XII. Although Maryland common law provides that an employment contract of indefinite duration may be terminated by the employer or employee at any time, Maryland recognizes a public policy exception for the tort of wrongful discharge "when the motivation for the discharge contravenes some clear mandate of public policy." *Adler v. Am. Standard Corp.*, 432 A.2d 464, 473 (Md. 1981). Under this exception, "[f]or an at-will employee to establish wrongful termination, 'the employee must be discharged, the basis for the employee's discharge must violate some clear mandate of public policy, and there must be a nexus between the employee's conduct and the employer's decision to fire the employee.'" *Yuan v. Johns Hopkins Univ.*, 157 A.3d 254, 262 (Md. 2017) (quoting *Wholey v. Sears Roebuck*, 803 A.2d 482, 489 (2002)). Crucially, this cause of action is "limited to remedying only those discharges in violation of a clear mandate of public policy *which otherwise would not be vindicated by a civil remedy*." *Makovi v. Sherwin-Williams Co.*, 561 A.2d 179, 180 (1989)

---

female Executive Director and the lowest-paid among the four direct service regions (New York City, Chicago, the Bay Area, and her region), all of which were led by men (two white males and one Hispanic male)." (ECF No. 1 ¶ 6.) At this stage, Ms. Green's allegation that the three other Executive Directors—that is, three people with the same title as her—who were not African American received higher pay is sufficient to raise an inference of discrimination.

(emphasis added); *see also Kerrigan v. Magnum Ent., Inc.*, 804 F. Supp. 733, 735 (D. Md. 1992) ("It is clear that when a remedy is available under Title VII or [state statutes], an action for wrongful discharge will not lie in Maryland.").

As Judge Rubin of this Court has explained, where, as here, "Plaintiff's wrongful termination claim fits squarely within her Title VII discrimination and retaliation claims, [it] therefore fails because a statutory remedy exists under Title VII." *Cooper v. Balt. Gas & Elec. Co.*, Civ. No. JRR-23-3116, 2024 WL 3849526, at *20 (D. Md. Aug. 16, 2024). Moreover, Judge Hollander of this Court has explicitly rejected the notion that a wrongful discharge claim under Maryland law may be pled in the alternative on the theory that it should apply if the plaintiff cannot establish a statutory violation. *Paunovic v. Genesis Healthcare, LLC*, Civ. No. ELH-17-2448, 2018 WL 3439263, at *7 (D. Md. July 17, 2018). In this case, therefore, Ms. Green's wrongful discharge claim in Count XII cannot be adequately alleged because Title VII, MFEPA, and Section 1981 all afford statutory remedies for the unlawful employment conduct alleged. Similarly, Ms. Green cannot plead wrongful discharge in the alternative because Maryland law allows such claims *only* where there is no adequate statutory remedy available. *Id.* Accordingly, Defendant's Motion is GRANTED as to Ms. Green's wrongful discharge claim in Count XII.

## IV. Dismissal With Prejudice

Generally, leave to amend a complaint to address deficiencies in the original complaint is freely given pursuant to Federal Rule of Civil Procedure 15(a). As this Court has previously noted, there is authority that a plaintiff should be given at least one opportunity to amend a complaint before dismissal of a case with prejudice. *See Harvey v. CNN, Inc.*, 520 F. Supp. 3d

693, 725 (D. Md. 2021) (citing *Silva v. Bieluch*, 351 F.3d 1045, 1048 (11th Cir. 2003)).  There is also authority, however, that leave to amend does not need to be granted unless requested by the plaintiff, *id.* (citing *Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 555–56 (5th Cir. 2007)), and such leave may be denied if amendment is deemed futile, *Goode v. Cent. Va. Legal Aid Soc'y, Inc.*, 807 F.3d 619, 624 (4th Cir. 2015).  As Judge Hurson of this Court recently explained, "[w]here a request for leave to amend is made outside the bounds of a formal motion, a court is likely to deny the request if it does not specify what the proposed amendment is and what it will accomplish." *Demurjian v. Dunbar*, Civ. No. BAH-23-3190, 2025 WL 404380, at *6 (D. Md. Feb. 5, 2025) (collecting cases); *see* Loc. R. 103.6 (D. Md. 2025) (requiring motion requesting leave to file amended complaint with attached "original of the proposed amended pleading . . ."); *Nemphos v. Nestle Waters N. Am., Inc.*, 775 F.3d 616, 628 (4th Cir. 2015) (denying leave to amend where plaintiff "did not file a separate motion requesting leave to amend her complaint or attach a proposed amended complaint to her opposition brief"); *Francis v. Giacomelli*, 588 F.3d 186, 197 (4th Cir. 2009) (citing Local Rule 103.6 to affirm denial of leave to amend).  Where, as here, "plaintiffs file[] no separate motion, and they attach[] no proposed amendment or statement indicating how they might wish to amend their complaint . . . their statement . . . fail[s] to provide the district court with a means by which to determine whether the amendment would cure the defects in the initial complaint." *Francis*, 588 F.3d 186; *see* (ECF No. 20 at 16–17.).  In this case, Ms. Green's bare request for leave to amend identifies no proposed amendments and no claims as to which she seeks any such amendment.  *See* (ECF No. 20 at 16–17.)

Moreover, futility or abandonment form separate bases for dismissal with prejudice as to Counts I, II, III, IV, V, VI, VIII, and X.  An amendment is futile "when the proposed amendment is clearly insufficient or frivolous on its face."  *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986).  As this Court has repeatedly explained, an amendment is insufficient or frivolous if it would not survive a motion to dismiss.  *See, e.g.*, *401 N. Charles, LLC v. Sonabank*, Civ. No. RDB-17-0872, 2018 WL 6570680, at *2 (D. Md. Dec. 13, 2018) (citing *Whitaker v. Ciena Corp.*, Civ. No. RDB-18-0044, 2018 WL 3608777, at *3 (D. Md. July 27, 2018)).  As to the Title VII claims in Count I, III, and V, Ms. Green has abandoned those claims by failing to respond to iMentor's arguments for dismissal of these claims, and abandoned claims are subject to dismissal with prejudice.  *See Woodbury v. Stepping Stones Shelter, Inc.*, Civ. No. PWG-17-1674, 2018 WL 3122457, at *6 (D. Md. June 25, 2018) (collecting cases); *see also Sewell v. Strayer Univ.*, Civ. No. DKC-12-2927, 2013 WL 6858867, at *4 (D. Md. Dec. 27, 2013).  As to the wrongful discharge claim in Count XII, any amendment would be futile because such claim cannot lie due to the existence of an adequate remedy under MFEPA and Title VII.  Relatedly, because Ms. Green has failed to exhaust her administrative remedies under MFEPA by failing to file her EEOC charge within six months of the challenged conduct, any amendment of Counts II, IV, VI, VIII, and X would be unable to cure the deficiency justifying dismissal.  Accordingly, leave to amend is denied, and Counts I, II, III, IV, V, VI, VII, VIII, IX, X, and XII are DISMISSED WITH PREJUDICE.  As explained above, Defendant's Motion is DENIED as to Ms. Green's claim for discrimination in violation of 42 U.S.C. § 1981 in Count XI, which remains pending.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss (ECF No. 17) is GRANTED IN PART and DENIED IN PART. Specifically, Defendant's Motion is GRANTED as to Counts I, II, III, IV, V, VI, VII, VIII, IX, X, and XII, which are DISMISSED WITH PREJUDICE. Defendant's Motion is DENIED as to Count XI, which remains pending. Defendant shall file an Answer to Count XI within fourteen (14) days of the date of this Memorandum Opinion and Order (i.e., by August 22, 2025).

A separate Order follows.


Date: August 8, 2025                                /s/
                                              _____
                                              Richard D. Bennett
                                              United States Senior District Judge